NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBERT P. KASER | ) | No. C 05-2458 JF (PR) |
| | ) | |
| Petitioner, | ) | **ORDER DENYING PETITION** |
| | ) | **FOR WRIT OF HABEAS** |
| vs. | ) | **CORPUS** |
| | ) | |
| STATE OF CALIFORNIA, et al., | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, a California state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a decision by the California Board of Prison Terms ("Board") that he is unsuitable for parole. The Court ordered Respondent to show cause why the petition should not be granted. Respondent filed a motion to dismiss, which the Court denied. Respondent then filed an answer addressing the merits of the petition, and Petitioner filed a traverse. Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and will deny the petition.

**BACKGROUND**

The charges against Petitioner arose from the murder of his stepson in 1985. In 1989, Petitioner, who is currently in custody at San Quentin State Prison, pleaded <u>nolo</u> <u>contendere</u> to a charge of second-degree murder (Cal. Pen. Code § 187). Order to Show Cause ("OSC") at 2. The El Dorado Superior Court sentenced Petitioner to a prison term of fifteen-years-to-life, plus a six-year sentence enhancement. Id.

In 2004, the Board found Petitioner unsuitable for parole because he would pose an unreasonable danger to society if released, citing as its reasons that the commitment offense was carried out "in a vicious and brutal manner," that the motive for the offense was "inexplicable" and "trivial" in relation to the offense, and that Petitioner had an unstable history of severe alcoholism and domestic violence. Ans., Ex. 3 (Transcript of Mar. 15, 2004 parole suitability hearing) at 81, 90, 92. In response, Petitioner filed state habeas petitions, later summarily denied, in the California superior, appellate, and supreme courts.[1] OSC at 2. Petitioner filed the instant federal habeas petition in 2005. Id.

The Board summarized Petitioner's commitment offense as follows:

> [Petitioner] and his spouse, Priscilla, had been separated and on August the 17th of 1985, [Petitioner] went to the residence that he and his spouse previously shared. [Petitioner] came to the house for the purpose of retrieving certain personal property . . . [Petitioner's stepsons Ehren and Miles Dixon] were requested by their mother to put on their shoes and assist [Petitioner] in loading his personal property. The two boys returned to their bedroom and were putting on their shoes when [Petitioner] appeared at the door of the room and fired a .45 caliber handgun at them. Victim Miles Dixon was shot first and reported that he observed [Petitioner] shoot at his brother, Ehren . . . [Petitioner] then walked to the kitchen of the residence and fired once at Priscilla Kaser. Mrs. Kaser claimed that [Petitioner] attempted to shoot her again, but the weapon malfunctioned and she was able to flee the residence following her sons, who ran to a neighbor's house for assistance [].
>
> Upon arriving, the [police] officers observed victims Ehren and Miles Dixon lying on the porch facing the opposite direction from each other. Mrs. Kaser . . . was attending to her injured sons [Petitioner having fled the scene]. [Thirty] minutes [] after the victims were moved by ambulance, investigating officers observed [Petitioner] drive up to and stop in front of the victim's residence.

---

[1] Though technically a "reasoned" opinion, the order from the Marin Superior Court denying Petitioner's state habeas petition simply states that the court found "some evidence" in the record to support the Board's decision. Ans., Ex. 9.

|   |   |
|---|---|
| 1 | [Officers arrested Petitioner, who had] a blood alcohol content of .31 percent. |
| 2 | [O]n August the 20th of 1985 . . . 14-year-old victim Ehren Dixon succumbed to |
| 3 | his gunshot wound.  Cause of death was attributed to a perforating wound of the liver, spleen, stomach, with a laceration of the hepatic portal vein. |

Ans., Ex. 3 at 18-20.

As grounds for federal habeas relief, Petitioner alleges that the Board (1) violated his rights to due process and denied his liberty interest in parole by failing to fix a term pursuant to California Penal Code section 3041 and by continuing to rely on the commitment offense and prior conduct; (2) subjected Petitioner to double jeopardy under the Fifth Amendment by its continued reliance on consecutive counts for which Petitioner has served his sentence; (3) continued the disproportionate punishment of Petitioner's life offense in violation of the Eighth and Fourteenth Amendments; (4) violated Petitioner's state and federal constitutional rights to due process and equal protection in basing its denial of suitability on a finding that the motive for the crime was "trivial in relation to the offense"; (5) violated the Constitution and the Americans With Disabilities Act ("ADA") in basing its denial of suitability on Petitioner's past history of alcoholism; (6) violated Petitioner's state and federal constitutional right to due process by stating that Petitioner needed "some self-help"; and (7) along with the El Dorado District Attorney, violated Petitioner's state and federal constitutional rights and his negotiated plea in its reliance on post-conviction criteria, prior non-criminal prison conduct and a perceived need for programming not required under the plea agreement.[2]

---

[2] Respondent contends that this Court does not have subject matter jurisdiction over the instant petition because California inmates have no federally-protected due process right to parole release, citing In re Dannenberg, 34 Cal. 4th 1061 (2005) and Sandin v. Connor, 515 U.S. 472 (1995). Controlling Ninth Circuit authority, however, holds that Petitioner has a federally-protected liberty interest in parole and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2254.  See McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Sass v. California Board of Prison Terms, 461 F.3d 1123, 1125 (9th Cir. 2006); Hayward v. Marshall, No. 06-55392, 2008 WL 43716, at *4 (9th Cir. Jan. 3, 2008).

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Kaser458.hcruling.md

# DISCUSSION

## A. Standard of Review

This Court will entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss

of error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the Petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.     Petitioner's Claims**

    1.     Due Process

Petitioner contends that the Board violated his right to due process and his denied his liberty interest in parole by failing to fix a term pursuant to California Penal Code section 3041 and by continuing to rely on the commitment offense and prior conduct.[3] OSC at 3; Pet. at 8, 8a.

A parole board's decision must be supported by "some evidence" to satisfy the requirements of due process. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128-29 (9th Cir. 2006) (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)). The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. See Hill, 472 U.S. at 455. An examination of the entire record is not required, nor is an independent assessment of the credibility of witnesses or weighing of the evidence. Id. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the Board. See id. Accordingly, if the Board's determination of parole suitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005); McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002).

---

[3] Petitioner also contends that the Board failed in its duty to conduct a proportionality and uniformity analysis. Pet. at 8a. The Board is under no such duty after it has determined that a prisoner is unsuitable for parole. Dannenberg, 34 Cal.4th 1069, 1071 (Cal. 2005).

In assessing whether or not there is "some evidence" supporting the Board's denial of parole, this Court must consider the regulations that guide the Board in making its parole suitability determinations. California Code of Regulations, title 15, section 2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." The regulations direct the Board to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b). Further, the regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. Cal. Code of Regs., tit. 15, § 2402(c)-(d).[4] It is important to note that, pursuant to Ninth Circuit case law, the seriousness of the commitment offense fades over time as a predictor of suitability. See Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003) ("A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.")

In the instant case, the Court finds that there was "some evidence" to support the Board's parole decision based not only on the circumstances of the commitment offense but also on other relevant considerations. After a full hearing, and in compliance with its statutory duty under section 3041, the Board concluded that Petitioner "would pose an unreasonable risk of danger to society and a threat to public safety if released from prison at this time."
Ans., Ex. 3 at 90. One reason the Board gave for its determination was that the commitment

---

[4] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. Cal. Code of Regs., tit. 15, § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Cal. Code of Regs., tit. 15, § 2402(d).

offense was "carried out in a vicious and brutal manner. There were multiple victims attacked, injured or killed in the same incident. This was the murder of Ehren Dixon. He was 14 years old, a young child." Id. The Board also observed that "[t]he offense was carried out in a manner which demonstrates exceptionally insensitive disregard for the suffering of other human beings." Id. As evidence for this observation, the Board stated that "Petitioner was intoxicated, had a .31 alcohol blood level . . . [and] went to the residence to remove some personal belongings . . [and] returned to the room where the boys were and [] shot them. Then [Petitioner] went after Priscilla Dixon. By the grace of God, she's here today because the weapon malfunctioned." Id. at 91. The Board also found that "[t]he motive of the crime is inexplicable and trivial in relationship to the offense. There's no real reason for this. No necessity for this. And yet, a young life is gone before it even had a chance to develop." Id.

In addition to the nature and circumstances of the commitment offense, the Board also considered other parole suitability factors, such as Petitioner's unstable social history. The Board noted that though Petitioner had no real history of criminal conduct and was cited for only a single infraction while in prison, he does "have a history of unstable and tumultuous relationships with others. Apparently, problems with substance abuse of alcohol, having problems with it. Wasn't able to get it under control." Id. at 92. Evidence for this came from Miles Dixon, a surviving victim of the incident and brother to the deceased victim, who stated at the parole hearing that Petitioner, his step-father, had tried many times to stay sober and failed "time and time again." Id. at 81. Miles Dixon also stated that when Petitioner, who even when sober was an angry man, drank, which he often did on the sly, he became moody and violent. When in this sort of mood, Petitioner often struck Miles and threatened to strike Priscilla, who also stated at the hearing that Petitioner was a violent alcoholic who could not stay sober. Id. at 82, 84-85. Miles and Priscilla Dixon both stated that they believed that Petitioner, if released, would try to harm, even murder, them. Id. at 83-84, 87, 88, 89. The Board also noted that the chief of police and the district attorney of El Dorado County opposed Petitioner's release. Id. at 92. Because some evidence exists to support the Board's fining of parole unsuitability,

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Kaser458.hcruling.md

7

1 | Petitioner's claim fails.

The Court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (1), (2).

2. <u>Double Jeopardy</u>

Petitioner contends that the Board, by relying on "consecutive charges" for assault for a deadly weapon for which Petitioner has served a determinate sentence, violated Petitioner's right to due process and to his Fifth Amendment right against double jeopardy. Pet. at 8b.

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "This protection applies both to successive punishments and to successive prosecutions for the same offense." <u>United States v. Soto-Olivas</u>, 44 F.3d 788, 789 (9th Cir. 1995) (quoting <u>United States v. Dixon</u>, 509 U.S. 688, 694 (1993). The denial of parole, however, is not the imposition of more than one punishment for the same offense and thus does not come within the scope of the Double Jeopardy Clause. See <u>Mahn v. Gunter</u>, 978 F.2d 599, 602 n.7 (10th Cir. 1992) (parole determination that did not lengthen original sentence did not result in double punishment); <u>Alessi v. Quinlan</u>, 711 F.2d 497, 501 (2d Cir. 1983) (denial of parole "is neither the imposition nor the increase of a sentence, and it is not punishment for purposes of the Double Jeopardy Clause").

Petitioner's claim is without merit. In accordance with the authorities cited above, the Board's denial of parole does not come within the protective scope of the Double Jeopardy Clause. Accordingly, the Court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (1), (2).

///

### 3. Eighth and Fourteenth Amendment

Petitioner contends that his punishment is disproportionate to the offense, and should, "net of credits," not "exceed the Board's own matrix for aggravated second degree murder," a less heinous offense. Pet. at 8c. Because his sentence was based on this alleged disproportionality, Petitioner contends that the sentence resulted in cruel and unusual punishment and a denial of due process. Id. In support of this contention, Petitioner cites case law that discusses and defines the "some evidence" standard discussed above. Id.

As noted previously, Petitioner pleaded nolo contendere to the charge of second-degree murder. Under California law, a plea of nolo contendere in a felony case is equivalent to a plea of guilty for all purposes.[5] A defendant who pleads guilty cannot later raise in habeas corpus proceedings independent claims relating to the deprivation of constitutional rights that occurred before the plea of guilty. See Haring v. Prosise, 462 U.S. 306, 319-20 (1983) (guilty plea forecloses consideration of pre-plea constitutional deprivations); Tollett v. Henderson, 411 U.S. 258, 266-67 (1973) (same); Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994). The only cognizable challenges in federal habeas corpus following a guilty plea concern whether the plea was voluntary and intelligent and whether the advice of counsel was adequate. Hill v. Lockhart, 474 U.S. 52, 56-57 (1985); Tollett, 411 U.S. at 267.

Petitioner's claim is without merit. By pleading nolo contendere, Petitioner waived his objections to any alleged pre-plea constitutional violations, including any Eighth Amendment objections to the (agreed-upon) sentence imposed. Because Petitioner waived his Eighth Amendment objections to the sentence, the Board cannot have violated his Eighth Amendment rights by refusing to free him from this same sentence. The only challenges available to

---

[5] "[A] plea of nolo contendere shall be considered the same as a plea of guilty and [] upon a plea of nolo contendere, the court shall find the defendant guilty. The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes. In cases other than those punishable as felonies, the plea and any admission required by the court during any inquiry it makes as to the voluntariness of, and factual basis for, the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." Cal. Pen. Code § 1016.

Petitioner are those set forth in Lockhart: whether his plea was knowing and voluntary and whether the advice given by trial counsel regarding the plea bargain was within the range of competence demanded of attorneys in criminal cases. Because Petitioner does not raise such claims, this Court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

### 4. Equal Protection

Petitioner contends that the Board violated his state and federal constitutional rights to due process and equal protection in its denial of suitability based on its finding that the motive for the crime was "trivial" in relation to the offense. Pet. at 8d. More specifically, Petitioner contends that "[a]ccording to this logic, the better reason one has to commit murder the sooner one will [be] parole[d]." Id.

The Equal Protection Clause of the Fourteenth Amendment does not assure uniformity of judicial decisions or immunity from judicial error; otherwise, every alleged misapplication of state law would constitute a federal constitutional question. See Alford v. Rolfs, 867 F.2d 1216, 1219 (9th Cir. 1989) (citing Beck v. Washington, 369 U.S. 541, 554-55 (1962)); see, e.g., Little v. Crawford, 449 F.3d 1075, 1083 (9th Cir. 2006) (Petitioner cannot establish equal protection claim warranting habeas relief simply because, or if, the Nevada Supreme Court misapplied Nevada law or departed from its past precedents). Unless the United States Supreme Court requires otherwise, a state law that mandates the same treatment for any person who commits a particular crime does not violate equal protection. See Alvarado v. Hill, 252 F.3d 1066, 1069-70 (9th Cir. 2001) (where Supreme Court precedent does not require different consideration for juveniles, state law mandating same treatment for juveniles and adults who commit particular crime does not violate equal protection). The Equal Protection Clause prohibits the arbitrary and unequal application of state law by the same court, however. See Myers v. Ylst, 897 F.2d 417, 421 (9th Cir. 1990).

Petitioner's claim is without merit. Petitioner has not shown, as required, that he is receiving treatment different from that received by a person who committed crimes for non-trivial reasons, even assuming that such a determination could meaningfully be made. Rather than meting out different treatment to prisoners according to motive, the Board, according to its statutorily assigned duty, looks at prescribed factors – motive being one of many – and applies these factors in its individualized assessment as to whether a prisoner is suitable for parole. See Title 15, Cal. Code of Regs. §§ 2281, 2404. Each case presents an idiosyncratic set of facts – motive may be significant in one case while behavior in prison may be salient in another. Because the Board makes an individualized assessment of each particular set of facts, the very idea of two distinct groups based on a relative "triviality of motive" simply is not tenable. Accordingly, the Court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

5. ADA

Petitioner contends that the Board violated the Constitution and the ADA by considering his past history of alcoholism. Pet. at 8e. Habeas petitions are permissible vehicles for bringing ADA challenges to parole decisions. See Bogovich v. Sandoval, 189 F.3d 1999 (9th Cir. 1999); Thompson v. Davis, 295 F.3d 890 (9th Cir. 2002). Nonetheless, a state parole board has a legitimate penological interest in considering a person's history of substance abuse as part of its decision, provided that such a consideration is part of an individualized assessment of parole suitability:

> Title II does not categorically bar a state parole board from making an individualized assessment of the future dangerousness of an inmate by taking into account the inmate's disability. Title II only prohibits discrimination against "qualified" people with disabilities. 42 U.S.C. § 12131 (defining a qualified person with a disability as a person who "meets the essential eligibility requirements for the receipt of services"). A person's disability that leads one to a propensity to commit crime may certainly be relevant in assessing whether that individual is qualified for parole. In addition, the parole board might show that legitimate penological interests justify consideration of an inmate's disability status beyond that appropriate in other settings. [Citations removed.] The parole

1 | board claims to have and undeniably does have legitimate penological interests in considering the plaintiffs' substance abuse backgrounds during the individualized inquiry for parole suitability. We hold only that plaintiffs may state a claim under Title II based on their allegations that the parole board failed to perform an individualized assessment of the threat they pose to the community by categorically excluding from consideration for parole all people with substance abuse histories.

Thompson, 295 F.3 at 898, n.4.

Petitioner's claim is without merit. Rather than showing that the Board operated according to a tacit rule of categorically excluding persons with disabilities such as chronic alcoholism, the record provides evidence that the Board, in compliance with the reasoning of Thompson, conducted an individualized assessment of Petitioner's future dangerousness based, in part, on Petitioner's specific history of alcoholism. There was evidence that Petitioner's alcoholism was a factor in, and perhaps even the principal cause, of the murder of Ehren Dixon, and the statements of Priscilla and Miles Dixon provided evidence that Petitioner was unable to abstain from alcohol permanently and, as a result, was unable to control his anger.

As applied in Thompson, Title II prohibits the Board from discriminating against a "qualified person" with disabilities, a qualified person being one who meets the essential eligibility requirements for the receipt of services. Here, "services" means suitability for parole. The Board found that Petitioner was unsuitable for parole because he failed to meet the various criteria indicating suitability. Though alcoholism was a factor in this determination, evidence exists to support the Board's finding of parole unsuitability even if one removes the fact of Petitioner's alcoholism. Accordingly, Petitioner was not a "qualified person" within the meaning of Title II.

The Court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

///

///

1    6.   <u>Due Process in Relation to Petitioner's Need for Self-Help</u>

Petitioner contends that the Board violated his constitutional right to due process "in its manipulation of the record stating that I 'need [] some self-help.'" Pet. at 8f. "[R]equiring 'some self-help' as a condition for fixing a life term is so vague as to be a denial of due process of law re my statutory liberty interest in parole." <u>Id.</u>

Petitioner's claim is without merit because it is a reiteration of the due process claim the Court addressed above in Section B.1. The Board's job, as assigned by statute, is to determine whether Petitioner would pose a danger to society if released. Stating that Petitioner requires self-help is not the imposition of a vague requirement, but rather a necessary part of the Board's individualized evaluation and determination of Petitioner's future dangerousness. In Petitioner's case, this "requirement" becomes less vague, and more pointed and relevant, when one considers the Dixons' testimony regarding Petitioner's repeated failure to benefit from therapy and treatment.

The Court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

   7. <u>Plea Agreement</u>

Petitioner contends that the Board, along with the El Dorado County District Attorney, violated his constitutional rights and the plea agreement "in [their] reliance on preconviction criteria and prior non-criminal prison conduct and perceived need for programming not required under the plea agreement." Pet. at 8g. More specifically, Petitioner contends that the district attorney, by opposing Petitioner's release, violated the terms of the plea agreement, which required only that Petitioner was to be sent to prison, to work, and to "behave [him]self." <u>Id.</u> Petitioner also contends that the Board violated his rights by considering the district attorney's opposition to parole. <u>Id.</u>

///

Petitioner's claims are without merit. There is no evidence on the record that the plea agreement even addressed the question of parole, let alone what the district attorney's role in a parole suitability proceeding would be. Because parole was not part of the plea agreement, the district attorney did not violate the agreement. Petitioner's contention that the Board should not have considered the district attorney's opposition, similarly is without merit. The Board may "consider all relevant information." Title 15 Cal. Code of Regs. § 2402(c)(6). Information from the prosecutor and the arresting and investigating officers, persons who have familiarity with Petitioner's criminal acts, qualifies as relevant and reliable information.

The Court concludes that the state court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

## CONCLUSION

The Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state court proceedings and parole hearing. Accordingly, the petition for writ of habeas corpus is DENIED. The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 2/29/08

JEREMY FOGEL
United States District Judge

Order Denying Petitioner for Writ of Habeas Corpus
G:\pro-se\sj.jf\hc.05\Kaser458.hcruling.md

A copy of this ruling was mailed to the following:

Robert P. Kaser
D-41415
San Quentin State Prison
San Quentin, California 94974

Brian G. Walsh
Office of the Attorney General
455 Golden Gate Avenue
12th Floor
San Francisco, CA 94102-7004

Order Denying Petitioner for Writ of Habeas Corpus
G:\pro-se\sj.jf\hc.05\Kaser458.hcruling.md

15